IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAUL KELLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CASE NO. CV02-HGD-1766-S |
| ) | |
| DOC'S TRANSFER & WAREHOUSE, INC., ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant [Doc. #16]. This matter is being considered by the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to Rule 73, Fed.R.Civ.P., and 28 U.S.C. § 636(c). Paul Kelley alleges that he was terminated from his employment with Doc's Transfer and Warehouse, Inc. (Doc's) based on his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* [Doc. #1, Complaint]. The parties have submitted briefs and exhibits in support of and in opposition to the motion for summary judgment, and the court is now prepared to rule on this motion.

### STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). However, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita, supra*, 475 U.S. at 592, 106 S.Ct. at 1359). It is, therefore, under this standard that the court must determine whether the plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

## FACTUAL BACKGROUND

The undisputed facts, or if disputed, the facts, viewed in the light most favorable to the non-moving party for the purpose of this motion, are as follows.

Doc's Transfer & Warehouse, Inc., is a warehouse and distribution center for a variety of products for various companies. Plaintiff, born September 6, 1950, began working at Doc's in January 1974. He was promoted from truck driver to warehouse supervisor in 1995. He was terminated on August 28, 2001.

C. E. Willis, Jr., is the president of Doc's and the highest ranking employee managing the day-to-day affairs of the company. Willis made the decision to terminate Kelley and two other Warehouse 1 supervisors, Wayne Brown and Scott Gaither. All were terminated at the same time. Kelley is African-American; Brown and Gaither are Caucasian. At the time of

Kelley's termination, Willis told Kelley that he knew that he and Wayne Brown had a lot of time with the company. [Kelley Depo. at 77-78].

There were a total of five warehouses utilized at the time of plaintiff's termination. Plaintiff was a supervisor in Warehouse 1 which stored, among other things, cigarettes. Kelley was a supervisor in the cigarette area of this warehouse, working the morning shift. Other supervisors over the cigarette area on other shifts were David Rankin, Benny Rankin, Wayne Brown, and Scott Gaither. [*Id.* at 29-30].[1]

Benny Rankin was the second in command at Doc's, over the lead supervisors in the warehouses and the hourly employees. [Willis Depo. at 11, 32]. According to Kelley, David Rankin was a supervisor in Warehouse 1 on the same level as himself, Gaither, and Brown. [Kelley Depo. at 92; Kelley Aff. at ¶ 8; Brown Aff. at ¶ 4]. Kelley stated that the difference between himself and David Rankin was that, on Rankin's shift, they mostly checked cigarettes out; whereas, on Kelley's shift, they only checked cigarettes in. In addition, taking inventory was a larger part of Rankin's duties than Kelley's. [Kelley Aff. at ¶ 8].[2]

Kelley testified that Gaither spent 100% of his time checking cigarettes. [Kelley Depo. at 70]. Wayne Brown and David Rankin spent about 50% of their time checking cigarettes [*id.* at 68, 71], and Kelley spent about 70% of his time doing this. [*Id.* at 41, 71]. In addition to cigarettes, Kelley handled electrical products, gas cylinders, office supplies, and products from Abbott Laboratories. [*Id.* at 40-41]. Kelley acknowledges that it was his

---

[1] According to Willis, another Warehouse 1 supervisor was Johnny Rankin, an African-American. [Willis Depo. at 14-15].

[2] Willis provides testimony in which he asserts that Rankin's job duties were much more expansive than those of Kelley. However, for purposes of summary judgment, the evidence is viewed in the light most favorable to the non-moving party.

job and that of the other supervisors assigned to the cigarette area to make sure that cigarettes were not stolen, lost, or misplaced. [*Id.* at 92]. When asked to describe his job, Kelley stated that employees would pull cigarette orders, put them on a pallet, and bring them up front for him to check to see if the order was correctly filled. [*Id.* at 31].

Another employee of concern is Richard Smith. Smith supervised oil products in Warehouse 4. [Willis Depo. at 30, 133]. At the time of Kelley's termination, Smith was supervisor of Warehouse 4 but did not work there full-time. [*Id.* at 134]. Kelley testified that about one month before his termination, defendant was "[i]n the process of shutting down the oil warehouse" and moved Smith to Warehouse 2. [Kelley Depo. at 72-73]. However, the evidence reflects that the oil products warehouse never was shut down completely, and Smith was assigned to split his time between the oil warehouse and Warehouse 2. [Willis Depo. at 134-37]. Willis assigned Smith to work in Warehouse 2 also because he needed help with the Abbott Laboratories products stored there. [*Id.* at 136].

One problem which preceded the termination of plaintiff, Gaither, and Brown was the continued theft of cigarettes. Doc's suffered two major thefts of cigarettes occurring in May of 2000 and in August of 2001. [Willis Depo. at 66]. The total loss exceeded $200,000. [*Id.* at 89-93]. After each theft, Doc's filed a police report and notified its insurance carrier. Willis submitted, at the insurance company's request, a list of Doc's employees it suspected of the thefts. On the first occasion, the suspects were all evening shift employees. Kelley was not a suspect. Kelley worked the morning shift and did not supervise the suspected individuals. On the second occasion, plaintiff also was not a suspect. Two individuals were

5

eventually put forth by defendant as possible suspects; but, for reasons set forth below, their identities are not relevant to the decision in this case.

After the second major loss, Doc's discontinued its cigarette inventory and terminated plaintiff, as well as the two other supervisors who worked primarily in the cigarette area. According to Willis, he would have fired Kelley even if Doc's had not discontinued its cigarette business because "he wasn't doing the job right." [Willis Depo. at 163].

## ANALYSIS

Kelley alleges that he was terminated from his job at Doc's based on his race, in violation of Title VII and 42 U.S.C. § 1981, and his age, in violation of the ADEA. In the Eleventh Circuit, age discrimination suits and race discrimination suits are viewed under the same general principles. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) (where a plaintiff claims disparate treatment under both Title VII and § 1983, courts may analyze these claims together); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989) (the test for intentional discrimination under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (in proving an age discrimination claim, a plaintiff can establish a *prima facie* case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas* for circumstantial evidence); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

In evaluating Title VII claims based on circumstantial evidence, the court uses the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and by the Eleventh Circuit in *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-85 (11th Cir. 1997). Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253-54 & n. 6, 101 S.Ct. at 1093-94 & n. 6. Once a *prima facie* case has been established, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. If a defendant carries its burden of producing legitimate, non-discriminatory reasons for its decision, the plaintiff is accorded the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff at all times retains the ultimate burden of persuading the trier of fact that the employer discriminated against the plaintiff. *Id.* at 253, 101 S.Ct at 1093.

> The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." *Burdine, supra*, at 253, 101 S.Ct. at 1093. In other words, is "the employer . . . treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335,

7

> n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977). The *prima facie* case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco, supra*, 438 U.S. at 577, 98 S.Ct. at 2949. Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093.

*U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

In order to make out a *prima facie* case of an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir.1992).

In order to prove discriminatory treatment in violation of Title VII, a plaintiff must first establish a *prima facie* case of discrimination. Absent direct evidence of discrimination, a plaintiff in a termination case may establish a *prima facie* case by showing (1) that he is a member of a protected class, (2) that he was qualified for the position held, (3) that he was terminated, and (4) that he was replaced by a person outside the protected class. *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995).

However, where a particular position is eliminated, a variant of the *McDonnell Douglas* test is used to determine if the resulting reduction in force was achieved with a discriminatory animus. Generally, a plaintiff in a job-reduction case can establish a *prima*

*facie* case by demonstrating (1) that he was in a protected group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion, and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of race or age in reaching the decision at issue. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). Where a position is entirely eliminated for non-discriminatory reasons, for a plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough. *Id.* at 1082-83.

Defendant asserts that Kelley's position was eliminated in a reduction in force and that he cannot prevail under the guidelines set out in *Earley* because he cannot show (1) that there was another position open at the warehouse at the time of his discharge and/or (2) that he was qualified for such a position.[3]

Kelley disputes defendant's claim that his position was eliminated because, while three supervisors were terminated, six remained. According to Kelley, there was no such thing as a "cigarette supervisor" or a "paint supervisor." All supervisors were the same, regardless of the product they supervised. While this may be true, the fact remains that with the elimination of the cigarette business, Doc's no longer needed three supervisors. Thus, three supervisory positions were, in fact, eliminated. They may have been general

---

[3] It is uncontested that plaintiff is a member of a protected class, African-American, and that he was qualified for the position from which he was terminated. Thus, Kelley has satisfied the first three criteria of *Coutu* and the first two under *Earley*.

9

supervisory positions as opposed to "cigarette" supervisory positions, but regardless of the titles given these positions, it is clear that they were eliminated.

Plaintiff also asserts that Doc's could have moved him to another position rather than terminating him. He alleges that oil products were discontinued about a month before his termination and that the supervisor over that warehouse, Richard Smith, was moved to another position. The evidence reflects that Doc's did not, in fact, eliminate its oil storage business; instead, it reduced the amount it stored. As a result, Smith was assigned to split his time between the oil warehouse and Warehouse 2. Furthermore, the fact that Smith was moved to another position is irrelevant because it occurred prior to plaintiff's termination; and plaintiff has failed to show that there was a position open at the time he was terminated.

However, while plaintiff cannot establish that there was another position available for him to assume, he must only make this showing if he lost his job in a non-discriminatory reduction in force. The third prong of *Earley* requires evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of race. According to Kelley, this element is satisfied by evidence that the "elimination" of his job was discriminatory. He claims that Willis testified that he terminated Kelley, not because of the loss of the cigarette business, but because Kelley was not doing his job which, in turn, caused the loss of the cigarette business. Kelley states that this claim is false. According to Kelley, the evidence reflects that Doc's believed that the employees working on the evening shift were responsible for the cigarette thefts. Kelley did not work the evening shift. Further, Kelley did not check out cigarettes where certain mis-shipments of cigarettes had occurred and never received any written disciplinary warnings. Moreover, David Rankin, who also

worked in the cigarette area, was not terminated when the cigarette business was discontinued; and Richard Smith was moved to another warehouse when, Kelley believed, the oil business was discontinued.[4]

Assuming, without deciding, that plaintiff has established a *prima facie* case of discrimination based on his race and/or age, the court will address defendant's asserted legitimate, non-discriminatory reasons for terminating Kelley.

Doc's Warehouse asserts that it terminated Kelley because it discontinued its cigarette business after suffering two major thefts and other losses which were the result of mis-shipments of cigarettes by Doc's warehouse personnel. According to defendant, with the discontinuation of the cigarette business, there was no longer any need for as many supervisors as previously had been the case. Therefore, plaintiff and two others were terminated. Doc's also justified its termination of Kelley by claiming that these losses were due, in part, to Kelley's poor management. These are legitimate, non-discriminatory reasons for plaintiff's termination. The burden thus is on plaintiff to establish *each* reason is pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997).

The evidence is undisputed that Doc's suffered substantial losses from the theft of cigarettes from its inventory. It is further undisputed that the thefts appeared to be "inside" jobs. However, it is also conceded that Kelley was not a suspect in any of these thefts. Nevertheless, according to Willis, plaintiff and the other discharged employees were primarily in charge of the cigarette inventories at the time of their terminations. Plaintiff admits that approximately 70% of his time was spent on the cigarette inventory. One of the

---

[4] It is not contested that both Rankin and Smith are substantially younger and not members of a protected class.

other terminated supervisors, Gaither, spent 100% of his time on cigarettes; and the other, Brown, spent 50% of his time at this task. Thus, when the decision was made to discontinue storing this product, the fact that a decision was made to terminate the two supervisors who did the most work in the cigarette area, Gaither and Kelley, should have come as no surprise at all.

Moreover, while Brown and Rankin both worked in cigarettes about 50% of the time, Rankin had other duties, as well, a fact conceded by Kelley. [Kelley Depo. at 37-38]. The fact that Doc's decided to retain Rankin and terminate Brown is a business decision which courts will not second guess. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

The fact that plaintiff was terminated along with two Caucasian supervisors further detracts from his claim that his termination was racially motivated. Thus, there is a legitimate, good faith basis to justify plaintiff's termination regardless of whether plaintiff also was chosen for termination because of poor management. Even assuming plaintiff can present evidence of pretext with regard to defendant's second, job-performance-related, reason for terminating him, he has failed to rebut the first reason. That reason is that the elimination of the cigarette storage aspect of its business caused Doc's Warehouse to decide to terminate three supervisors, and plaintiff and two others were chosen because they worked primarily in that area of the business.

Plaintiff has failed to present evidence to suggest or create a factual issue that defendant's asserted reason for plaintiff's termination was a pretext for unlawful race or age discrimination. The fact that Doc's Warehouse may have falsely alleged that plaintiff also

was chosen for termination because it was believed he had exhibited poor management skills in overseeing the cigarette inventory is irrelevant. Because the first stated reason for Kelley's termination is a legitimate, good faith reason for defendant's action that plaintiff has failed to show to be pretextual, summary judgment is appropriate.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 12th day of May, 2004.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE